Exhibit B

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. _CH-12-1335-1_

◯ Lawsuit
◯ Divorce

Ad Damnum $ _____

| TANYA GILBERT | VS | NATIONWIDE MUTUAL INSURANCE COMPANY |
|---|---|---|
| **Plaintiff(s)** | | **Defendant(s)** |

**TO: (Name and Address of Defendant (One defendant per summons))**

NATIONWIDE MUTUAL INSURANCE COMPANY who can be served through the COMMISSIONER OF INSURANCE

**Method of Service:**
◯ Certified Mail
◯ Shelby County Sheriff
✗ Commissioner of Insurance ($)
◯ Secretary of State ($)
◯ Other TN County Sheriff ($)
◯ Private Process Server
◯ Other

($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on **Nicole Davison / Law Offices of Bailey & Greer** Plaintiff's attorney, whose address is **6256 Poplar Avenue, Memphis, TN 38119** , telephone **+1 (901) 680-9777** within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the complaint.

JIMMY MOORE, Clerk / DONNA RUSSELL, Clerk and Master

TESTED AND ISSUED _August 23, 20__ _____, D.C.

TO TH...

NOTICE: Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice: Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 379-7895

I, JIMMY MOORE / DONNA RUSSELL, Clerk of the Court,
Shelby County, Tennessee, certify this to be a true and
accurate copy as filed this

_____

JIMMY MOORE , Clerk / DONNA RUSSELL, Clerk and Master

By _____, D.C.

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT, AT MEMPHIS

FILED BY COUNTY
CHANCERY COURT

AUG 2 3 2012

DONNA L. RUSSELL, C & M
TIME:_____ BY:_____

TANYA GILBERT,

     Plaintiff,

v.

                    Docket No. CH-12-1335-1

NATIONWIDE MUTUAL INSURANCE
COMPANY,

     Defendant.

---

## COMPLAINT

---

**To the Chancellors of the Chancery Court for the Thirtieth Judicial District:**

COMES NOW the Plaintiff, by and through the undersigned attorneys and for cause of action against the Defendant, would respectfully show and state to the Court as follows:

### JURISDICTION AND VENUE

1.     Plaintiff Tanya K. Gilbert is an adult resident of Fayette County, Tennessee, residing therein at 325 Lakewood Drive, Oakland, Tennessee 38060.

2.     Upon information and belief, Defendant Nationwide Mutual Insurance Company (hereinafter referred to as Nationwide) is an Ohio corporation licensed to do business and doing business in Memphis, Shelby County, Tennessee. Pursuant to T.C.A. § 56-2-501 *et seq.*, Nationwide may be served by service on the commissioner of the department of commerce and insurance. At all times material hereto, Nationwide provided uninsured/underinsured motorist coverage to the Plaintiff.

3.     Venue is proper in Shelby County, Tennessee as all of the wrongs alleged herein occurred in Shelby County, Tennessee, within the applicable statute of limitations, and this Court

has jurisdiction.

## FACTS

4.      Plaintiff was involved in an automobile accident on March 6, 2011 at approximately 6:45 a.m. near the intersection of North Parkway and Dunlap Street in Memphis, Shelby County, Tennessee with a vehicle being driven by Karen P. Nellis ("Nellis"). At the time of the accident, Ms. Nellis was an underinsured motorist and only had $50,000 of insurance covering her automobile.

5.      The accident was proximately caused by the negligence of Ms. Nellis, and Plaintiff was not at fault for causing the accident. The facts of the accident reveal that Plaintiff was operating her 2006 Nissan Altima eastbound on North Parkway while Ms. Nellis was operating her 2005 Ford Explorer SUV westbound on North Parkway when Ms. Nellis decided to make a left hand turn onto southbound Dunlap Street, colliding with Plaintiff's vehicle on the front passenger side. Ms. Nellis was cited for Failure to Maintain Safe Lookout by the police officer who responded to the collision, citation No. M096840.

6.      As a direct and proximate result of said collision, which occurred due to the negligent acts or omissions of Ms. Nellis, Plaintiff sustained severe and permanent injuries.

7.      Prior to the accident of March 6, 2011, Nationwide issued a policy of insurance to Plaintiff which provided uninsured/underinsured motorist coverage and which was in full force and effect at all times material hereto. The policy had uninsured/underinsured motorist limits of $100,000.00 per person and $300,000.00 per accident. The policy included $25,000 of Medical Payment coverage which would reduce the policy limits by the amount paid.

8.      Via a letter dated March 10, 2011, Nationwide was put on notice that Plaintiff had retained counsel to represent her regarding the March 6, 2011 collision.

9.     Three months later, on June 15, 2011, Nationwide sent a letter to Plaintiff's counsel, acknowledging counsel's representation of Plaintiff.

10.     As the Plaintiff was the insured/covered person under the policy of insurance issued by Nationwide, Nationwide had a continuing duty to deal with her fairly and in good faith and to attempt to resolve her claims without unnecessarily delaying or increasing the costs of litigation.

11.     On October 13, 2011, Ms. Nellis' insurance carrier offered its policy limits of $50,000.00.

12.     On October 13, 2011, Plaintiff's counsel sent a letter to Nationwide confirming a prior telephone conversation wherein Plaintiff's counsel informed Nationwide that Ms. Nellis' insurance carrier offered its policy limits of $50,000.00.

13.     In the October 13, 2011 letter, Plaintiff demanded the available insurance coverage from Nationwide, the policy limits of $50,000.00.

14.     On October 18, 2011, Plaintiff's counsel sent a letter to Nationwide stating that Plaintiff wanted to accept Ms. Nellis' insurance carrier's offer of its policy limits of $50,000.00.

15.     On November 21, 2011, Ms. Nellis' insurance carrier sent a letter to Nationwide, attaching the declaration page from the policy and informing Nationwide that it had extended an offer of its policy limits of $50,000 to the Plaintiff.

16.     On December 14, 2011, after Plaintiff's offer of Nationwide's policy limits of $50,000 was rejected, Plaintiff made a counter-offer of $45,000 to try and get the matter settled. The adjuster countered with an offer of $25,000 and then failed to take any action for another month.

17.     On December 20, 2011, Ms. Nellis' insurance carrier sent a letter to Nationwide, informing Nationwide that it had tendered its full policy limits to the Plaintiff in return for a full

release, and it asked Nationwide to waive its subrogation rights against Ms. Nellis and allow Plaintiff to execute the release and accept the policy limits in settlement of her claim against Ms. Nellis.

18.    Despite the fact the Nationwide knew on or before October 13, 2011 that Ms. Nellis' insurance carrier was offering its policy limits, Nationwide did not waive subrogation against Ms. Nellis and allow Plaintiff to settle with Ms. Nellis' insurance carrier until three months later, on January 18, 2012. Plaintiff signed the release on January 26, 2012.

19.    In a letter dated January 11, 2012, Plaintiff again demanded tender of policy limits.

20.    On January 20, 2012, Plaintiff received a letter from Forrest Jenkins, informing Plaintiff he would be handling Nationwide's defense.

21.    On February 22, 2012, the Plaintiff filed a cause of action against Ms. Nellis and her husband in the Circuit Court of Shelby County, Tennessee, Docket # 000772-12, Division I. The Complaint alleged that Ms. Nellis was negligent and that her negligence caused severe and permanent injuries to the Plaintiff. The Complaint sought damages against Ms. Nellis in the amount of Three Hundred Thousand Dollars ($ 300,000.00) for Plaintiff's injuries. Pursuant to T.C.A. § 56-7-1206, Plaintiff caused a copy of the Complaint to be served upon unnamed Defendant Nationwide.

22.    Plaintiff filed the complaint against Ms. Nellis to preserve Plaintiff's rights because the statute of limitations on Plaintiff's claim was going to run on March 6, 2012. Plaintiff was forced to incur the unnecessary time and expense of filing a complaint and discovery because Nationwide had not signed a tolling agreement.

23.    On March 13, 2012, Nationwide confirmed via email that it would not agree to any of the medical bills Plaintiff incurred, that it would not agree to accept service of the complaint, and that it would not stipulate as to liability.

24.     Letters were sent to Nationwide on January 11, 2012, March 6, 2012, and March 13, 2012, expressing frustration with the manner in which Nationwide was handling Plaintiff's case and reminding Nationwide of its duty of good faith and fair dealing that was owed to its insured.

25.     On April 9, 2012, Nationwide finally offered to pay the $25,000 Medical Payment coverage portion of Plaintiff's policy, after misrepresenting that this payment had been offered before, and on May 1, 2012, Nationwide paid the Medical Payment coverage.

26.     Because Nationwide would not stipulate to all of the medical bills, Plaintiff incurred the expense of preparing and collecting medical proof. The deposition of Dr. Matthew Smolin was taken on May 25, 2012. The deposition of Dr. Dale Criner was set up, and Dr. Criner had already put in work reviewing records and preparing for the deposition before it was cancelled.

27.     The depositions of Plaintiff and Ms. Nellis were taken because Nationwide would not stipulate as to liability, again causing further expense and delay.

28.     In an effort to avoid or minimize its liability under its contract of insurance with the Plaintiff and in dereliction of its duty to handle this claim in good faith, Nationwide filed an Answer to the Plaintiff's Complaint on May 4, 2012 which intentionally and/or fraudulently denied liability due to insufficient knowledge or information, despite the fact that Ms. Nellis turned left in front of Plaintiff and was cited for failure to maintain a safe lookout and despite the fact that the accident occurred over a year ago, allowing Nationwide ample time to investigate. The Plaintiff asserts that at the time this allegation was made in the Answer, Nationwide did not have a factual basis for making this allegation. Further, the Plaintiff alleges that the placement of this allegation in the Answer was an act of bad faith designed solely to attempt to minimize and/or avoid Nationwide's liability for payment of this claim under the policy.

29.     In an effort to avoid or minimize its liability under its contract of insurance with the Plaintiff and in dereliction of its duty to handle this claim in good faith, Nationwide filed an Answer to the Plaintiff's Complaint on May 4, 2012, which intentionally and/or fraudulently denied that Plaintiff sustained the injuries set forth in the Complaint due to insufficient knowledge or information, despite the fact that the accident occurred over a year ago, allowing Nationwide ample time to investigate. The Plaintiff asserts that at the time this allegation was made in the Answer, Nationwide did not have a factual basis for making this allegation. Further, the Plaintiff alleges that the placement of this allegation in the Answer was an act of bad faith designed solely to attempt to minimize and/or avoid Nationwide's liability for payment of this claim under the policy.

30.     After much expense and delay, the matter was arbitrated on May 29, 2012. On June 13, 2012, the arbitrator issued her decision, finding Ms. Nellis to be 100% at fault for the collision and awarding Plaintiff: (1) $55,764.70 in medical bills; (2) $3,957.10 in lost wages; (3) $65,000 for pain and suffering; and (4) $12,000 for loss of enjoyment of life.

31.     During the course of this litigation, Nationwide was provided information from health care providers which indicated that Plaintiff sustained severe injuries as a result of the accident . As a result of the injuries she sustained, Plaintiff has suffered significant damages which include, but are not limited to, emotional and physical pain and suffering, medical bills and costs, and the loss of enjoyment of life. However, Nationwide failed to make any reasonable attempts to settle this action under her primary uninsured/underinsured motorist insurance policy with limits of $100,000.00. The Plaintiff submits that, as proven by the arbitration award, any good faith evaluation of this claim would have indicated that the claim was worth substantially more than the policy limits afforded to the Plaintiff by Nationwide and that Nationwide's intentional and/or

reckless failure to offer and pay policy limits in this action constituted bad faith.

32.     Despite learning of Plaintiff's injuries, Nationwide engaged in a course of conduct designed to deny and delay payment and hinder the resolution of this matter.  The Plaintiff submits that Nationwide's intentional and/or reckless attempts to deny and delay the proceedings constitute bad faith.

33.     Despite learning of Plaintiff's injuries, Nationwide failed to properly evaluate the claim.   The Plaintiff submits that Nationwide's intentional and/or reckless failure to properly evaluate the claim constitutes bad faith.

34.     Despite learning of Plaintiff's injuries, Nationwide made all efforts to avoid obtaining information regarding Plaintiff's injuries.   The Plaintiff submits that Nationwide's intentional and/or reckless efforts to avoid obtaining information regarding Plaintiff's injuries constitutes bad faith.

35.     Other examples of Nationwide's bad faith include, but are not limited to, the following: (1) failure to respond to letters, emails, offers of settlement, and other correspondence; (2) failure to acknowledge the case as one of clear liability; (3) failure to investigate the case; (4) failure to properly value the necessary and reasonable treatment of Plaintiff; (5) concerted efforts to stonewall and thwart any progress that would move the case towards a resolution; (6) failure to promptly select an arbitrator or arbitration date; (7) refusal of Jenkins to accept service on behalf of Nationwide; (8) delay in executing a tolling agreement despite the looming statute of limitations deadline; (9) initial failure to stipulate to any medical bills Plaintiff incurred; (10) failure to stipulate to all medical bills; (11) refusing to acknowledge the diagnostic procedures performed; (12) forcing Plaintiff to incur the expense and delay of taking medical proof; (13) failure to provide any factual

basis for denying liability; (14) failure to respond to requests to provide the names of any fact witnesses testifying that the car accident was not Ms. Nellis' fault; (15) the suggestion that Nationwide only provide discovery information one week before the date of the arbitration; (16) misrepresentations regarding prior settlement offers; and (17) production of Plaintiff's recorded statement to Nationwide five days before the arbitration.

36.     Plaintiff requested to settle this case with Nationwide for policy limits more than sixty days prior to the filing of this Complaint. However, Nationwide failed to take reasonable and good faith steps to evaluate and settle this action. The Plaintiffs allege that Nationwide's failure to tender policy limits on the uninsured/underinsured insurance policy constitutes bad faith.

37.     As Nationwide refused to offer Plaintiff policy limits under its insurance policy to settle Plaintiff's claims, the Plaintiff has had to continue litigating this matter at great expense and effort which has caused the Plaintiff to suffer economically and emotionally. The Plaintiff avers that Nationwide's refusal to attempt to settle this matter within the terms of the policy constitutes an act of bad faith.

38.     Upon information and belief, the Plaintiff avers that Nationwide's bad faith conduct in this action is not isolated, but part of the common policies, practices, and customs of Nationwide in adjusting and evaluating claims in a manner to deny and delay payment of legitimate claims and unnecessarily increase the costs of litigation. Upon information and belief, the Plaintiff avers that Nationwide has been subjected to similar claims in the past but has refused to change its policy to conform to its duty to handle claims in good faith.

39.     As a result of Nationwide's affirmative misconduct and bad faith, the Plaintiff has endured emotional pain and suffering, economic loss, and the loss of use of funds which were

required to be paid under the terms of the policy issued by Nationwide.

## LIABILITY

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

## COUNT 1 - BREACH OF CONTRACT

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

40.     Nationwide, as the Plaintiff's uninsured/underinsured motorist carrier, has a contractual duty of dealing with its insured fairly and in good faith in handling claims made by its insured under the uninsured/underinsured motorist provision of the automobile liability insurance contract.

41.     Nationwide has not dealt with its insured fairly and in good faith in handling claims made by its insured, the Plaintiff, under the aforementioned insurance policy.

42.     Plaintiff has been damaged as a direct and proximate result of Nationwide's breach of contract and is entitled to incidental and consequential damages resulting from said breach.

## COUNT 2 - STATUTORY BAD FAITH

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

43.     Nationwide, as the Plaintiff's uninsured/underinsured motorist carrier, has a duty of dealing with its insured fairly and in good faith in handling claims for a loss made by its insured under the uninsured/underinsured motorist provision of the automobile liability insurance contract.

44.     Nationwide refused to pay the Plaintiff's loss within sixty days after a demand was

made.

45.     Nationwide's refusal to pay the loss was not made in good faith and has inflicted additional expense, loss, and injury upon the Plaintiff.

46.     Plaintiff avers that Nationwide's conduct as set forth herein constitutes bad faith under T.C.A. § 56-7-105, entitling the Plaintiff to all applicable bad faith penalties, as well as recovery for attorney's fees and any additional expenses and injuries resulting from Nationwide's bad faith failure to timely pay the claim.

## COUNT 3 - COMMON LAW BAD FAITH

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

47.     Nationwide, as the Plaintiff's uninsured/underinsured motorist carrier, has a duty of dealing with its insured fairly and in good faith in handling claims made by its insured under the uninsured/underinsured motorist provision of the automobile liability insurance contract.

48.     The violation of its duty to deal with the Plaintiff fairly and in good faith subjects Nationwide to liability for the extra-contractual tort of bad faith.

## COUNT 4 - TENNESSEE CONSUMER PROTECTION ACT

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

49.     The Plaintiff is a "person" within the meaning of the Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated § 47-18-101 *et seq*., and thus has standing to bring a TCPA claim. A stated purpose of the Tennessee Consumer Protection Act is, "To protect consumers and legitimate business enterprises from those who engage in unfair and deceptive acts or practices."

50.     The conduct of Nationwide alleged herein constitutes unfair and deceptive actions sufficient to subject Nationwide to liability for violating the TCPA.

51.     Nationwide's deceptive acts or practices have caused the Plaintiff to suffer an ascertainable loss as Plaintiff has not received full compensation for her injuries.

52.     The unfair and deceptive actions as set forth herein were performed knowingly and willfully.

53.     The Plaintiff is entitled to treble damages and attorney's fees pursuant to by T.C.A. § 47-18-109.

## COUNT 5 - PUNITIVE DAMAGES

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

54.     The Plaintiff avers that the conduct of Nationwide alleged herein was performed intentionally, recklessly, fraudulently, and maliciously, entitling the Plaintiff to a substantial award of punitive damages.

## <u>PRAYERS FOR RELIEF</u>

55.     As a result of the Defendant's affirmative misconduct, the Plaintiff has been damaged. The Plaintiff seeks to recover all damages to which she may be entitled under the law from the Defendant, including, but not limited to, the following:

    a)    Loss of use of funds due under the policy of insurance;
    b)    All applicable bad faith penalties;
    c)    Emotional pain and suffering;
    d)    Statutory and discretionary costs;
    e)    Punitive damages;
    f)    Treble damages;
    g)    Pre-Judgment Interest;

h)      Post-Judgment Interest;

i)      Incidental and consequential damages as a result of the Defendant's breach of contract, including, but not limited to, attorneys' fees and all other litigation expenses in the underlying action; and

j)      All such further relief, both general and specific, to which she may be entitled under the premises.

56.   WHEREFORE, PREMISES CONSIDERED, Plaintiff sues the Defendant and prays for a judgment against the Defendant for compensatory damages in an amount considered fair and reasonable by the trier of fact, not to exceed one million dollars ($1,000,000.00), and for all such further relief, both general and specific, to which she may be entitled under the premises.

57.   WHEREFORE, PREMISES CONSIDERED, Plaintiff sues the Defendant for her personal injuries and prays for a judgment against the Defendant for punitive and/or treble damages in an amount considered fair and reasonable by the trier of fact, not to exceed one million dollars ($1,000,000.00), and for all such further relief, both general and specific, to which she may be entitled under the premises.

Respectfully submitted,

BAILEY & GREER, PLLC

R. Sadler Bailey (#11230)
John Zuck (#26686)
Nicole Gibson Davison (#24442)
6256 Poplar Avenue
Memphis, TN 38119
Phone: (901) 680-9777
Fax:    (901) 680-0580

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

TANYA GILBERT,

    Plaintiff,

v.

          Docket No. *CH-12-1335-1*

NATIONWIDE MUTUAL INSURANCE COMPANY,

    Defendant.

---

### PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY

---

    COMES NOW the Plaintiff, by and through the undersigned attorneys of record, and pursuant to Tennessee Rule of Civil Procedure 36, and hereby propounds Plaintiff's First Set of Requests for Admissions to Defendant Nationwide Mutual Insurance Company (hereinafter referred to as "Nationwide"). Said Requests for Admissions shall be answered fully and separately under oath within forty-five (45) days after the date of service thereof.

    **REQUEST NO. 1:**   Admit that Plaintiff suffered injuries as a result of the motor vehicle accident on March 6, 2011.

    **ANSWER:**

    **REQUEST NO. :**   Admit that the arbitrator, Lorrie K. Ridder, found that all of Plaintiff's medical expenses, totaling $55,764.70, were related to the motor vehicle accident on March 6, 2011.

    **ANSWER:**

    **REQUEST NO. 3:**   Admit that in 2011, no medical doctor told Nationwide that Plaintiff did not suffer injuries on March 6, 2011.

**ANSWER:**

**REQUEST NO. 4:**    Admit that between January 1, 2012 and May 29, 2012, no medical doctor told Nationwide that Plaintiff did not suffer injuries on March 6, 2011.

**ANSWER:**

**REQUEST NO. 5:**    Admit that diagnostic procedures are often performed after an accident to ascertain the type of injury and/or the extent of an injury.

**ANSWER:**

**REQUEST NO. 6:**    Admit that the performance of diagnostic procedures is reasonable after an accident to ascertain the type of injury and/or the extent of an injury.

**ANSWER:**

**REQUEST NO. 7:**    Admit that Nationwide is the Plaintiff's Uninsured/Underinsured Motorist Carrier.

**ANSWER:**

**REQUEST NO. 8:**    Admit that Nationwide policy number 63 41 D 041404 was in full force and effect on March 6, 2011.

**ANSWER:**

**REQUEST NO. 9:**    Admit that Plaintiff is an "insured" under the terms of Nationwide policy number 63 41 D 041404.

**ANSWER:**

**REQUEST NO. 10:**  Admit that Nationwide policy number 63 41 D 041404 provides coverage to Plaintiff for claims arising out of the accident of March 6, 2011.

**ANSWER:**

**REQUEST NO. 11:**  Admit that Karen P. Nellis is an Uninsured/Underinsured Motorist as defined by Nationwide policy number 63 41 D 041404.

**ANSWER:**

**REQUEST NO. 12:**  Admit that the limits of Uninsured/Underinsured Motorist coverage available to the Plaintiff under Nationwide policy number 63 41 D 041404 is $100,000.00 per person.

**ANSWER:**

**REQUEST NO. 13:**  Admit that the limits of Uninsured/Underinsured Motorist coverage available to the Plaintiff under Nationwide policy number 63 41 D 041404 is $300,000.00 per accident.

**ANSWER:**

**REQUEST NO. 14:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide owes a duty of good faith to the Plaintiff.

**ANSWER:**

**REQUEST NO. 15:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide owes a duty of fair dealing to the Plaintiff.

**ANSWER:**

**REQUEST NO. 16:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to disclose to the Plaintiff all benefits that may apply to claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 17:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier,

Nationwide has a duty to disclose to the Plaintiffs all coverages that may apply to claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 18:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to disclose to the Plaintiff all time limits that may apply to claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 19:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to treat the Plaintiff's interests with equal regard as it does its own interests.

**ANSWER:**

**REQUEST NO. 20:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to promptly investigate claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 21:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to thoroughly investigate claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 22:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to objectively investigate claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 23:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to promptly retain independent experts to assist in the fair investigation of claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 24:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to promptly retain qualified experts to assist in the fair investigation of claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 25:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to promptly retain independent experts to assist in the reasonable investigation of claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 26:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to promptly retain qualified  experts to assist in the reasonable investigation of claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 27:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to promptly retain independent experts to assist in the objective investigation of claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 28:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to promptly retain qualified  experts to assist in the objective investigation of claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 29:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier,

Nationwide has a duty to promptly retain independent experts to assist in the prompt investigation of claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 30:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to promptly retain qualified experts to assist in the prompt investigation of claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 31:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, any failure by Nationwide to fairly investigate claims made by the Plaintiff does not permit Nationwide to deny the claim due to lack of information.

**ANSWER:**

**REQUEST NO. 32:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, any failure by Nationwide to reasonably investigate claims made by the Plaintiff does not permit Nationwide to deny the claim due to lack of information.

**ANSWER:**

**REQUEST NO. 33:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, any failure by Nationwide to fairly investigate claims made by the Plaintiff does not permit Nationwide to deny the claim due to one-sided information.

**ANSWER:**

**REQUEST NO. 34:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, any failure by Nationwide to reasonably investigate claims made by the Plaintiff does not permit Nationwide to deny the claim due to one-sided information.

**ANSWER:**

**REQUEST NO. 35:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide may not ignore evidence that supports coverage for claims made by the Plaintiff.

**ANSWER:**

**REQUEST NO. 36:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, in the event Nationwide ignores evidence that supports coverage for claims made by the Plaintiff, Nationwide acts unreasonably towards the Plaintiff.

**ANSWER:**

**REQUEST NO. 37:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, in the event Nationwide ignores evidence that supports coverage for claims made by the Plaintiff, Nationwide breaches the duty of good faith it has to the Plaintiff.

**ANSWER:**

**REQUEST NO. 38:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, in the event Nationwide ignores evidence that supports coverage for claims made by the Plaintiff, Nationwide breaches the duty of fair dealing it has to the Plaintiff.

**ANSWER:**

**REQUEST NO. 39:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide must fairly pay claims made by the Plaintiff if payment is warranted.

**ANSWER:**

**REQUEST NO. 40:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide must reasonably pay claims made by the Plaintiff if payment is warranted.

**ANSWER:**

**REQUEST NO. 41:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide must promptly pay claims made by the Plaintiff if payment is warranted.

**ANSWER:**

**REQUEST NO. 42:**  Admit that, as Plaintiff's Uninsured/Underinsured Motorist Carrier, Nationwide has a duty to pay claims made by the Plaintiff unless there is a good faith reason for not doing so.

**ANSWER:**

**REQUEST NO. 43:**  Admit that Nationwide did not make reasonable efforts to evaluate this claim in 2011.

**ANSWER:**

**REQUEST NO. 44:**  Admit that Nationwide did not make reasonable efforts to evaluate this claim between January 1, 2012 and May 29, 2012.

**ANSWER:**

**REQUEST NO. 45:**  Admit that Nationwide did not make reasonable efforts to resolve this claim in 2011.

**ANSWER:**

**REQUEST NO. 46:**  Admit that Nationwide did not make reasonable efforts to resolve this claim between January 1, 2012 and May 29, 2012.

**ANSWER:**

Respectfully submitted,

BAILEY & GREER, PLLC

R. Sadler Bailey (#11230)
John M. Zuck (#26686)
Nicole Gibson Davison (#24442)
6256 Poplar Avenue
Memphis, TN 38119
Phone: (901) 680-9777
Fax:    (901) 680-0580

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT, AT MEMPHIS

TANYA GILBERT,

      Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY,

      Defendant.

Docket No. CH-12-1335-1

---

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT

---

COMES NOW the Plaintiff, by and through the undersigned attorneys, and pursuant to Tennessee Rules of Civil Procedure 26, 33 and 34, and propounds the following Interrogatories and Request for Production of Documents to Nationwide Mutual Insurance Company (hereinafter "Nationwide") to be answered separately and fully under oath within FORTY-FIVE (45) days of the date of service thereof. Said Interrogatories and Request for Production of Documents are directed to the Defendant, but include inquiry regarding information within the knowledge of the Defendant, its attorneys, employees, or anyone else acting on its behalf. Further, said Interrogatories and Request for Production of Documents are to be considered continuing, requiring the supplementation of an answer in the event new information is obtained by the Defendant, its attorneys, employees, or any other persons acting on its behalf subsequent to the time the Defendant's original answers are served upon the Plaintiff.

### DEFINITIONS

As used in these Interrogatories and Requests for Production of Documents served herewith, the following definitions and instructions shall apply:

[i]. As used herein, the terms "you," "your," or "yourself" refer to the Defendant Nationwide, and each agent, representative, attorney, or other person acting or purporting to act for said Defendant.

[ii]. As used herein, the term "person" means any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated associated, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

[iii]. As used herein, the term "identification," "identify," or "identity" when used in reference to (a) a natural individual, requires you to state his or her full name and residential and business address, and his or her present or last known residence and business telephone numbers; (b) a corporation, requires you to state its full corporate name and any names under which it does business, its state of incorporation, the address of its principal place of business, and the name and address of its registered agent for service of process within the State of Tennessee; (c) a business, requires you to state the full name under which the business is conducted, its business address, the types of businesses in which it is engaged, and the identity of the person or persons who own, operate, and control the business.

[iv]. As used herein, the term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomever made, including but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons, by any means or mode of conveying information, including but not limited to telephone, facsimile, any broadcast media or any other form, whether written or spoken.

[v]. As used herein, the term "document" means any medium upon which information can be recorded or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum, invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, facsimile, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing, sketch, graph, index, list, tape, photograph, microfilm, data sheet, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which was, but is no longer, in your possession, custody or control.

[vi]. As used herein, the word "or" appearing in an interrogatory should not be read so as to eliminate any part of the interrogatory, but, wherever applicable, it should have the same meaning as the word "and."

[vii]. With regard to the terms defined herein, all terms used in the singular shall include the plural, and all terms used in the plural shall include the singular.

[viii]. If any privilege is claimed with respect to any document or communication, identify the document or communication and state the privilege claimed and the basis therefore.

---

## INTERROGATORIES

---

**INTERROGATORY NO. 1**: State the full name, address, employer, and job title of the individual answering, or any individuals who participated in answering, these interrogatories and request for production of documents.

**ANSWER:**

**INTERROGATORY NO. 2**: With respect to any expert witnesses you intend to call at the trial of this action, please identify said expert, state the subject matter upon which the expert is expected to testify, and state the substance of the facts and opinion to which the expert is expected to testify, and a summary of the grounds for each opinion. In addition, please provide each witnesses's qualifications (including a list of all publications authored in the previous ten years), a list of all other cases in which, during the previous four years, the witness testified as an expert, and a statement of the compensation to be paid for the study and testimony in the case.

**ANSWER:**

**INTERROGATORY NO. 3**: If you contend that any person or entity other than you caused or contributed to the injuries alleged in the Complaint, please identify each such person or entity and state the factual basis of your contention.

**ANSWER:**

**INTERROGATORY NO. 4**: If you asserted any affirmative defense(s) in your Answer to the Complaint, please set for the factual basis for each and every affirmative defense raised.

**ANSWER:**

**INTERROGATORY NO. 5**: With regard to the claim(s) for benefits submitted by the Plaintiff resulting from the March 6, 2011 automobile accident, state:

    (a)    The date you first received such a claim(s);

    (b)    If you now take the position, or have ever taken the position, that no coverage is afforded under your policy for the claim(s), please state the specific basis for each denial, and identify what, if any, language in the policy supports such a denial;

    (c)    List and identify each and every document, recording, e-mail, telephonic memorandum, note, or other document of *any nature* whatsoever which you have in your possession concerning Plaintiff's claim(s) for uninsured/underinsured motorist benefits, and for each such document state:

        (i)    the title of the document;

        (ii)    the author of the document;

        (iii)    the date of the document; and

        (iv)    the person who is the custodian of such document and that person's address and telephone number.

**ANSWER:**

**INTERROGATORY NO. 6**: With respect to all policies providing coverage to the Plaintiff which are at issue in this lawsuit, please state the inception and expiration dates of said policies.

**ANSWER:**

**INTERROGATORY NO. 7**: State the names of all adjusters, claims personnel, physicians, claims managers, attorneys, or other personnel at any time employed or hired by you to handle, or

participate in, the investigation and/or denial of Plaintiff's benefits and/or claims resulting from the March 6, 2011 automobile accident. With respect to each such person, state with specificity:

    (a)    the capacity in which (s)he was employed or hired;

    (b)    the period of time (s)he was so employed or hired;

    (c)    whether (s)he is presently employed by you and in what capacity;

    (d)    his or her present or last known address;

    (e)    his or her present or last known employer; and

    (f)    what aspect of Plaintiff's claim(s) that (s)he participated in.

**PLEASE NOTE THAT PLAINTIFF WILL OBJECT TO THE INTRODUCTION OF ANY TESTIMONY FROM WITNESSES NOT IDENTIFIED PURSUANT TO THIS INTERROGATORY.**

    **ANSWER:**

    **INTERROGATORY NO. 8:** Please state the specific instructions that were given to officers, employees, agents, and attorneys, or any other persons involved in the investigation of all claims by the Plaintiff resulting from the accident on March 6, 2011, including all parties listed in your Answer to Interrogatory 7, as to investigating, evaluating, denying, adjusting, terminating and/or reviewing claims.

    **ANSWER:**

    **INTERROGATORY NO. 9:** Please state the specific instructions which were given to officers, employees, agents, and attorneys, or any other persons involved in the investigation of all claims by the Plaintiff resulting from the accident on March 6, 2011, as to communication(s) in any form or medium with the Plaintiff.

    **ANSWER:**

**INTERROGATORY NO. 10:** Please state with specificity how long the instructions referred to in your Answers to Interrogatories 8 and 9 had been in effect:

    a)    prior to the denial of Plaintiff's benefits and/or claim(s) at issue; and

    b)    after the denial of Plaintiffs' benefits and/or claim(s) at issue.

**ANSWER:**

**INTERROGATORY NO. 11:** Please state the common policies, practices, and customs of Nationwide in adjusting and evaluating claims involving bodily injury to the claimant(s).

**ANSWER:**

**INTERROGATORY NO. 12:** Within the last five (5) years, and with regard to failure to pay benefits and/or claims to your insureds, have you been accused or charged with:

    (a)    negligent or bad faith failure to investigate a claim or pay benefits and/or claims;

    (b)    violation of the Tennessee Consumer Protection Act for failure to investigate a claim or pay benefits and/or claims; and

    (c)    breach of contract for failure to investigate a claim or pay benefits and/or claims.

**ANSWER:**

**INTERROGATORY NO. 13:** With respect to each claim referred to in your Answer to Interrogatory No. 12, please state with specificity:

    (a)    whether litigation was commenced against you based on your failure to investigate or pay a claim;

    (b)    the name of the court wherein such litigation was commenced and the number and caption of the case; and

    (c)    the disposition of the litigation regardless of whether suit was filed.

**ANSWER:**

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**   Please produce a copy of each and every document or thing which supports, substantiates, supplements, refutes or describes any of your responses to the preceding Interrogatories.

**RESPONSE:**

**REQUEST NO. 2:**   Please produce, in its entirety, the Defendant's claims file, underwriting file, any other file and/or documents maintained or in the possession of Defendant's agents regarding the claim(s) resulting from the March 6, 2011 automobile accident, as well as any and all other documents in Defendant's possession or control, or in the possession or control of its agents, employees and/or attorneys, relating to the insurance policy issued to the Plaintiff and which is the subject matter of this litigation.

**RESPONSE:**

**REQUEST NO. 3:**   Please produce a copy of each and every document in the possession or control of Defendant relating to the claim(s) made by Plaintiff resulting from the March 6, 2011 automobile accident and Defendant's evaluation of the claim(s) made by Plaintiff.

**RESPONSE:**

**REQUEST NO. 4:**   Please produce a copy of all policies, rules, guidelines, regulations and handbooks utilized by Defendant and its agents and employees which deal in any respect with the receipts of claims, the evaluation of claims, the adjustment of claims, the investigation of claims

and/or the payment of claims.

**RESPONSE:**

**REQUEST NO. 5:**   If you claim that any of the above requested documents are privileged

and therefore not subject to production, with respect to each such document, state:

      (a)     The exact nature of the privilege claimed;

      (b)     The nature of the document withheld under the alleged privilege (correspondence, memoranda, recording, etc.);

      (c)     The identity of the party who authored the document and the party who received it; and

      (d)     A detailed summary of the contents of the allegedly privileged document.

**RESPONSE:**

Respectfully submitted,

BAILEY & GREER, PLLC

R. Sadler Bailey (#11230)
John Zuck (#26686)
Nicole Gibson Davison (#24442)
6256 Poplar Avenue
Memphis, TN 38119
Phone: (901) 680-9777
Fax:    (901) 680-0580

Service of Process
Dept. of Commerce & Insurance
500 James Robertson Pkwy.-4th Floor
Nashville TN 37243



CERTIFIED MAIL

7011 2970 0003 4364 8579

FIRST CLASS

02 1M
0004282828      SEP 09 2012
MAILED FROM ZIP CODE 37243

7011 2970 0003 4364 8579        8/29/12
NATIONWIDE MUTUAL INSURANCE COMPANY
800 S GAY STREET STE 2021   % C T CORP
KNOXVILLE, TN  37929-9710